84 P.3d 960 (2004)
2004 WY 10
In the Matter of the Worker's Compensation Claim of: Christena PADILLA, Appellant (Employee/Claimant),
v.
The STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Objector/Defendant).
No. 03-61.
Supreme Court of Wyoming.
February 19, 2004.
*961 Representing Appellant: Dion J. Custis, Cheyenne, Wyoming.
Representing Appellee: Patrick J. Crank, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steve Czoschke, Senior Assistant Attorney General; David L. Delicath, Assistant Attorney General.
Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.
GOLDEN, Justice.
[¶ 1] Christena Padilla appeals the denial of worker's compensation benefits. We affirm.

ISSUE
[¶ 2] The Appellant presents the following issue for review:
Did the district court err as a matter of law in determining that Ms. Padilla was not eligible for permanent partial disability benefits, and past and future medical expenses pursuant to § 27-14-405 and § 27-14-401, because she has not met her burden of proof to show that treatment, including surgery, for two herniated cervical *962 discs was the result of her work-related injury?

FACTS
[¶ 3] Ms. Padilla has worked for Blue Cross-Blue Shield for over fourteen years as a microfilm technician. In July 2001, she saw her family doctor complaining of pain in her neck, radiating into her right shoulder and arm. Upon examination, Ms. Padilla was found to have two herniated cervical discs and surgical intervention was necessary. Ms. Padilla filed a claim for worker's compensation, claiming that the herniated discs were the result of the repetitive motion activities required by her employment. The Workers' Compensation Division (the Division) denied benefits because it claimed that Ms. Padilla's injuries were not related to any work activity. Upon review, the Workers' Compensation Medical Commission (the Medical Commission) determined that Ms. Padilla failed to carry her burden of proof that her injury was caused by work activity. The district court affirmed the decision of the Medical Commission.

STANDARD OF REVIEW
[¶ 4] Although the district court has already reviewed this case, this Court affords no deference to the findings or decision of the district court. This Court reviews the case as if it had come here directly from the agency. Judicial review of an agency decision is guided by statute. Section 16-3-114(c) provides:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
(i) Compel agency action unlawfully withheld or unreasonably delayed; and
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2003).
[¶ 5] When an appeal is from a contested case proceeding under the Wyoming Administrative Procedure Act in which both parties presented evidence and factual findings were made, this Court reviews the findings pursuant to § 16-3-114(c)(ii)(E). This Court reviews the entire record to determine if the decision of the agency is supported by substantial evidence. Substantial evidence is relevant evidence that a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.
[¶ 6] If this Court finds that the agency decision is supported by substantial evidence, then we further review the decision pursuant to § 16-3-114(c)(ii)(A). This Court examines the entire record to determine if the agency action was arbitrary or capricious. Under the umbrella of arbitrary and capricious actions would fall potential mistakes such as inconsistent or incomplete findings of fact or any violation of due process. An agency action will not be found to be arbitrary or capricious as long as there is some rational basis for the action. See Newman v. Wyo. Workers' Safety and Comp. Div., 2002 WY 91, ¶¶ 7-24, 49 P.3d 163, ¶¶ 7-24 (Wyo.2002).
[¶ 7] At an administrative hearing, the claimant bears the burden of proving *963 all essential elements of her claim by a preponderance of the evidence. This includes proving that her injury arose out of and in the course of employment. Whether an injury is work-related is a question of fact. This Court defers to the Medical Commission on issues concerning credibility and weight to be given conflicting evidence and testimony. Newman, ¶ 26; Ikenberry v. State ex rel. Wyoming Workers' Compensation Div., 5 P.3d 799, 802 (Wyo.2000) ("The agency, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses.")

DISCUSSION
[¶ 8] The Medical Commission denied benefits because it determined that Ms. Padilla had not presented adequate evidence that her injury was related to her work duties. The evidence presented by Ms. Padilla was the testimony of two co-workers regarding Ms. Padilla's work duties; Ms. Padilla's testimony regarding her work duties and her injury; the deposition testimony of Ms. Padilla's treating physician; and various medical records.
[¶ 9] With regard to Ms. Padilla's work duties, the Medical Commission determined that her duties did not entail repetitive motion activities because she engaged in several different activities during the course of an average workday. Ms. Padilla, of course, believes that she did present sufficient evidence to support the repetitive nature of her various work activities. Because the determination of this particular issue is not decisive in this case, this Court will accept, for the sake of further argument, that Ms. Padilla's employment duties include repetitive motion activities. The decisive issue is whether Ms. Padilla adequately linked her job activities to her injury, the herniated cervical discs.
[¶ 10] Ms. Padilla's treating doctor opined "[i]t is quite clear in the medical literature that repetitive neck motions are frequently the cause of degenerative disc disease in the neck." He then stated that based upon the history he had been given by Ms. Padilla, he related her injury to the repetitive motion activities of her work. During his deposition, he testified that "[t]here is ample medical literature that supports the fact that repetitive motion type injuries do result in degenerative changes in the neck and do, indeed, predispose individuals to degenerative problems and herniated discs in the cervical spine and the spine in general." He further testified that the herniated cervical discs suffered by Ms. Padilla were consistent with fourteen years of employment involving the same, repetitive tasks. In offering this opinion, however, the doctor was referring to repetitive motion activities only in general terms. The doctor testified that he had no knowledge of what Ms. Padilla's actual work activities entailed.
[¶ 11] In an apparent inconsistency, Ms. Padilla's treating doctor strongly linked Ms. Padilla's herniated cervical discs to a significant precipitating trauma. When asked if herniated discs can be caused by the natural aging process, the doctor responded:
Certainly they can. Generally speaking, there's an incident which occurs which a person can pinpoint as being responsible for a herniated disc, particularly a disc as large as the one that she has. I would not expect to see, as part of normal, everyday wear-and-tear, discs this size, although it can occur, be it exceedinglyI think nearly unheard of to have that be the case.
While this testimony clearly rules out natural aging as a cause of Ms. Padilla's herniated discs, it also seems to rule out repetitive motion. The same occurs when the doctor was asked if coughing could have caused Ms. Padilla's herniated discs:
If you were to ask me whether or not I see patients who become symptomatic because of disc herniations as a result of bronchitis or coughing spells, I would tell you that of the several thousand patients that I've seen in my career, I've never seen more than maybe one person tell me that a cough or a sneeze herniated a disc.
In the same vein, I've seen a fairly large percentage of patients which have had work-related accidents or incidents occur in which they were straining or pulling on something that herniated a disc. So to answer your question, I think it is improbable *964 that there's a relationship between the two, but it's possible.
Thus, not only did the doctor testify that herniated discs of the magnitude suffered by Ms. Padilla generally are caused by a precipitating traumatic event, he opined that the traumatic event generally would be something fairly significant, certainly more significant than a cough or a sneeze.
[¶ 12] The doctor attempted to clarify his statement somewhat throughout his deposition. When asked if herniated discs the size of Ms. Padilla's typically result only from substantial trauma, the doctor replied:
Not necessarily. My point is that generally discs that are that large result in symptoms that are fairly easy to trace back to a specific incident. In other words, I would expect a disc that size to result in pretty noticeable symptoms for a patient. That's not to say that it absolutely always has to be that way. Generally speaking, a disc which is that size will let a person know that it's actually there, and they'll be able to tell you when they began to feel the presence of that disc....
A little later when asked if this type of disc herniation could result without a significant precipitating traumatic event he testified:
To say that something could not happen is too strong of a statement. I would say very likely there should be an incident which occurs to cause a disc to herniate with this magnitude. That does not mean that you can't herniate a disc like this coughing or sneezing or tripping over a crack in the sidewalk. These discs can herniate for various reasons. It's more likely the case that some form of fairly significant trauma occurred to cause a disc to herniate to this magnitude.
[¶ 13] The only significant traumatic event related by Ms. Padilla happened in January 1998 when Ms. Padilla fell off a chair at work. Among other factors ruling out the fall as the precipitating event was her treating doctor's deposition testimony that, although he could not say exactly how long the herniations had been present, he did testify that in his opinion they were no more than two years old. As reflected in the doctor's notes and as testified to by Ms. Padilla at the hearing, Ms. Padilla stated that she began noticing the pain in late April 2001. In her hearing testimony, she specifically denied the occurrence of a precipitating traumatic incident. Instead, she related her pain to the repetitive motion activities of her work. She testified that the pain was present when she performed her employment tasks.
[¶ 14] Ms. Padilla presented no further testimony regarding the causation of her herniated cervical discs. The Medical Commission thus was presented with inconsistent evidence regarding causation. On the one hand, Ms. Padilla testified that she related her injury to the repetitive motion activities required by her employment. This testimony was supported by her treating doctor to the extent that he testified that her injury was consistent with long-term repetitive motion activities. On the other hand, Ms. Padilla's treating doctor testified that he would almost always expect herniations the size of those suffered by Ms. Padilla to be the result of a significant, precipitating traumatic event. Ms. Padilla specifically denied being subject to any such traumatic event.
[¶ 15] Referring back to our standard of review, whether an injury is work-related is a question of fact. This Court must defer to the Medical Commission on issues concerning credibility and weight to be given conflicting evidence and testimony. Given the contradictory nature of the evidence presented by Ms. Padilla, this Court cannot say that the Medical Commission erred in determining that Ms. Padilla did not present sufficient, credible evidence to support a finding that the repetitive motion activities of her job were responsible for her herniated cervical discs.

CONCLUSION
[¶ 16] Ms. Padilla had the burden of presenting adequate evidence to relate her herniated cervical discs to her employment. Ms. Padilla and her treating doctor presented factually inconsistent testimony. Faced with this inconsistent testimony, the Medical Commission was justified in finding that Ms. Padilla had not carried her burden of proof.
*965 The decision of the Medical Commission is affirmed.