2005 WY 124

**In the Matter of the Worker's Compensation Claim of Brett A. CRAMER, Appellant (Employee/Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. 04–217.

Supreme Court of Wyoming.

Sept. 28, 2005.

C. John Cotton, Cotton Law Office, Gillette, Wyoming, for Appellant.

Patrick J. Crank, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; Kristi M. Radosevich, Assistant Attorney General, for Appellee.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Brett Cramer alleges that he suffered a cervical spine injury out of and in the course of his employment with Weld Test & Inspection. The Wyoming Workers' Compensation Division (Division) denied Cramer's claim for benefits, and Cramer objected. After a contested case hearing, the Office of Administrative Hearings (OAH) also denied his claim, finding Cramer did not meet his burden of proving that the injury occurred while in the course and scope of his employment. Cramer appealed to the district court, which affirmed the denial of benefits, and he now appeals to this Court. We affirm.

## ISSUES

[¶ 2] Cramer presents two issues for our review:

1. Was the decision of the OAH contrary to the record, and unsupported by substantial evidence?

2. Was the decision of the OAH arbitrary, capricious, or an abuse of discretion?

## FACTS

[¶ 3] On October 18, 2002, Cramer was employed as a weld inspector by Weld Test & Inspection. While performing an inspection at a mine site near Gillette, Wyoming, Cramer fell from a ladder and fractured the heel in his left foot. He was treated by Dr. Bryan Den Hartog of the Black Hills Orthopedic & Spine Center, P.C., in Rapid City, South Dakota, on October 23, 2002, and taken off work due to his fractured foot. Cramer submitted a Report of Injury, listing only the injury to his foot. On November 1, 2002, the Division determined Cramer's foot injury was compensable and his claims for medical care and temporary total disability were paid by the Division.

[¶ 4] Cramer continued to seek treatment from Dr. Hartog for his foot injury until

April 9, 2003. On that occasion, Cramer also sought treatment for left knee pain that he claimed was related to the October 18, 2002, work accident. Examination of the knee revealed a calcified nodule on the medial aspect of the patella, which Dr. Hartog noted would "be somewhat of a problem for [Cramer] as far as his kneeling and squatting goes." Dr. Hartog also concluded that, given the improvement in his foot, Cramer should be able to return to full work duty in a week. Cramer did not return to work nor did he seek additional medical treatment for his foot or knee until August 25, 2003, a month after he received notification (his third) from the Division requesting further information regarding the injury to his left knee.

[¶ 5] In the meantime, Cramer saw Dr. Max Winkler, a chiropractor in Rapid City, on June 27, 2003, about pain and numbness in his neck, shoulder and left arm. Cramer attributed the symptoms to the October 18, 2002, work accident. However, Dr. Winkler noted Cramer reported that the symptoms started just three weeks before that initial office visit. Dr. Winkler also noted the date of injury as June 13, 2003. Dr. Winkler treated Cramer's physical symptoms on that date and again on July 7. Cramer never filed a report or claim with the Division regarding Dr. Winkler's treatment.

[¶ 6] Almost two months later, on September 2, 2003, Cramer saw Dr. Nathan Simpson, an orthopedic spine surgeon, with complaints of pain in his neck and his left shoulder and arm. Cramer reported he suffered a work-related fall on October 18, 2002, and that "he started developing neck pain that goes into the left shoulder and down the back of his left arm" subsequent to the work accident. Dr. Simpson diagnosed a cervical spine injury and ordered an MRI, which revealed a herniated disc at C6/7. Medical records submitted to the Division by Dr. Simpson indicated Cramer was a candidate for surgical repair of his herniated disc, Cramer desired to undergo the surgery, and Cramer would not be able to return to work until at least six weeks after the cervical spine surgery.

[¶ 7] In a Final Determination Letter issued on September 19, 2003, the Division denied Cramer's claim for medical and disability benefits stemming from the cervical spine injury on the ground that Cramer had not demonstrated the injury was a compensable work-related injury. Cramer objected to the final determination, and a contested case hearing was held on April 21, 2004. The hearing officer denied benefits following that hearing. Ultimately, the hearing officer determined Cramer had not met his burden of proving the cervical spine injury was work related.

## STANDARD OF REVIEW

[¶ 8] "The claimant has the burden of proving every essential element of his claim by a preponderance of the evidence. Under the statutory definition of injury, he must prove that his injury arose out of and in the course of his employment. Whether an employee's injury occurred in the course of his employment is a question of fact." *Kuntz–Dexter v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2002 WY 101, ¶ 9, 49 P.3d 190, 192 (Wyo.2002) (citations omitted).

[¶ 9] When reviewing a matter initiated before an administrative agency we do not afford any special deference to the district court's decision. Instead, we review the case as if it came directly from the administrative agency. *Hicks v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2005 WY 11, ¶ 16, 105 P.3d 462, 469 (Wyo.2005) (citing *Robbins v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2003 WY 29, ¶ 15, 64 P.3d 729, 732 (Wyo. 2003)). The scope of our review of an administrative decision is limited by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule

of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 10] We recently reiterated the standard of review to be applied when both parties present evidence at an administrative hearing in *Berg v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2005 WY 23, ¶ 7, 106 P.3d 867, 870 (Wyo.2005):

In appeals where both parties submit evidence at an administrative hearing, *Newman* mandates that appellate review be limited to application of the substantial evidence test. *Newman [v. State ex rel. Wyoming Workers' Safety and Comp. Div.]*, 2002 WY 91, ¶ 22, 49 P.3d 163 [(Wyo. 2002)]. This is true regardless of which party appeals from the agency decision. In addition, this court is required to review the entire record in making its ultimate determination on appeal. *Newman*, at ¶ 19 and ¶¶ 24–26.

The substantial evidence test to be applied is as follows:

"In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence."

*Newman*, at ¶ 12 (*quoting State ex rel. Workers' Safety and Compensation Div. v. Jensen*, 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001)).

Even when the factual findings are found to be sufficient under the substantial evidence test, *Newman* further concludes this court may be required to apply the arbitrary-and-capricious standard as a "safety net" to catch other agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other [Wyoming Administrative Procedural Act] review standards.

*Loomer v. State ex rel. Wyoming Workers' Safety Comp. Div.*, 2004 WY 47, ¶ 15, 88 P.3d 1036, ¶ 15 (Wyo.2004)

## DISCUSSION

### *Substantial Evidence*

[¶ 11] In denying benefits for Cramer's cervical spine injury, the hearing examiner found:

The record in this case is insufficient to establish that the herniation at C6/7 was caused by the industrial accident on October 18, 2002. It is certainly possible that the disc herniation may have been caused or exacerbated by the fall, but the significant delay in emergence and reporting of symptoms makes it impossible to sustain the Claimant's burden of proof.

Cramer attacks random factual findings of the hearing officer and asserts that his ultimate conclusion is not supported by substantial evidence. Review by this Court is not limited to reviewing Cramer's isolated alleged factual discrepancies. Rather, this Court is charged with reviewing the entire record to determine if substantial evidence supports the hearing officer's ultimate determination that Cramer failed to establish his cervical spine injury was caused by a work-related injury.

[¶ 12] Upon review of the entire record, we find the hearing officer's denial of benefits is supported by substantial evidence. The record reveals Cramer suffered a fractured left foot as a result of a work-related injury on October 18, 2002. The Division determined the injury was compensable. In February of 2003, Cramer complained of pain in his left knee, which he also attributed to his work injury. Cramer submitted bills to the Division for medical treatment received on his knee. The first indication that the Division received from Cramer regarding the cervical spine injury at issue was in early September 2003 when the Division received medical bills encompassing treatment for that injury.

[¶ 13] The cervical spine injury manifested itself by way of pain in the neck, left shoulder and numbness in the left arm. Cramer, his wife (Laura) and his father (Glenn), the only witnesses who provided live testimony at the hearing, all testified Cramer first experienced those symptoms in late December 2002. Cramer testified he reported such symptoms to Dr. Hartog at that time and during each subsequent visit. Dr. Hartog's medical records contained detailed notes concerning his treatment of Cramer's foot and knee injuries but contained no notations regarding any complaints about, or treatment of, neck, shoulder or arm pain or numbness. In a letter admitted during the hearing, Dr. Hartog specifically stated he did not recall any discussions with Cramer concerning neck or shoulder problems.

[¶ 14] The witnesses also recounted specific incidents in April and June of 2003 when Cramer complained of pain in his left shoulder and arm. Cramer and his father testified the pain eventually became so unbearable that, on June 27, 2003, Cramer sought treatment from a chiropractor, Dr. Max Winkler. Dr. Winkler's records reflected complaints by Cramer of pain in his neck, left shoulder and arm. The intake records indicated Cramer attributed the pain to his work injury. Cramer also stated on the intake form that he had been experiencing the complained of pain for approximately three weeks before the office visit and had never previously experienced similar pain. Dr.

Winkler's notes confirmed Cramer told him the pain began three weeks earlier. Dr. Winkler listed the date of injury as June 13, 2003. Cramer saw Dr. Winkler only one further time, July 7. Cramer did not file a claim or report with the Division for any treatment received by Dr. Winkler.

[¶ 15] Cramer did not seek any additional treatment for his neck, shoulder or arm until September 2, 2003. On that date he saw Dr. Simpson, an orthopedic spine surgeon. Cramer reported to Dr. Simpson that he was involved in a work-related fall on October 18, 2002, and he subsequently developed pain in his neck, left shoulder and arm. There is no indication as to exactly when, "subsequently," Cramer began to experience pain. An MRI of Cramer's back and neck showed a herniated disc at the C6/7 level. The bills and the medical records which resulted from Cramer's consultations with Dr. Simpson were submitted to the Division. This is the first notification the Division had of any injury of the cervical spine.

[¶ 16] At the hearing through deposition testimony taken on January 20, 2003, Dr. Simpson testified Cramer had suffered a cervical spine injury, his complaints of pain and numbness were caused by the herniated disc and nerve impingement at the C6/7 level, and the herniated disc was most likely caused by a traumatic event, not by aging or degenerative disc disease. Dr. Simpson stated Cramer provided no information regarding the date of the onset of his symptoms. Based on the information provided by Cramer, Dr. Simpson could not pinpoint when Cramer's cervical spine injury occurred and, therefore, was unable to offer an opinion as to the cause of the injury and whether it was related to Cramer's October 18, 2002, work-related accident. Dr. Simpson opined that it would be unusual for a person with Cramer's injury to go nearly a year before making a complaint to a medical provider.

[¶ 17] In a letter dated January 27, 2004, which was based on a review of Cramer's medical records, Dr. Simpson, once again, declined to offer an opinion that Cramer's symptoms resulted from the work accident. Dr. Simpson found that Dr. Winkler's notes of June 27, 2003, the only medical records

substantiating Cramer's complaints of pain in his neck, shoulder and arm, were "far enough removed from the time of the accident that that [sic] cannot be used, in my opinion, to state that his symptoms dated from the time of the accident." Dr. Simpson concluded: "If [Cramer] complained of his neck, shoulder and arm pain and/or arm numbness soon after the accident, then it is most likely due to the accident. If, however, he did not complain of these symptoms until many months after the accident, then that correlation cannot clearly be made."

[¶ 18] From the above evidence, the hearing officer found Cramer had not proved by a preponderance of the evidence that his cervical spine injury was work related. Specifically, relying on the medical evidence, the hearing officer concluded the evidence was insufficient to show a causal connection between the herniated disc and his October 18, 2002, work accident. The Division received no notification of the herniated disc until early September 2003, nearly one year after Cramer's work accident. Even providing for Cramer's visit to the chiropractor towards the end of June 2003, Dr. Simpson stated that, because the symptoms arose so far removed from the date of the work accident, he could not causally connect the cervical spine problem to that accident. Although Cramer and his witnesses testified that Cramer experienced pain in his neck, shoulder and arm as early as late December 2002, the medical records did not support their testimony. As a finder of fact, the hearing officer was entitled to weigh the evidence and resolve any conflicts. *Kuntz–Dexter,* 2002 WY 101, ¶ 12, 49 P.3d at 193. Viewing the evidence in its entirety, we cannot say the hearing officer's conclusion was not supported by substantial evidence.

### Arbitrary, Capricious or Abuse of Discretion

[¶ 19] Cramer alleges that the decision denying benefits was arbitrary, capricious or an abuse of discretion. The primary premise of Cramer's argument is that the hearing officer found Cramer and his witnesses to be credible, which should inevitably have led to a decision in his favor and the

granting of benefits. According to Cramer, any other outcome is illogical.

[¶ 20] After thoroughly reviewing the Order, this Court finds no evidence that the hearing officer determined that everything Cramer and his witnesses testified about was material and truthful. For instance, in discussing Cramer's testimony regarding Cramer's conversations with Dr. Hartog, the hearing officer implicitly rejected Cramer's testimony to the effect that he specifically complained to Dr. Hartog of pain in his neck and shoulder. Instead, the hearing officer was only inclined to believe Cramer had requested Dr. Hartog examine his neck and back for evidence of additional injuries. Such is evidenced by the following two paragraphs:

The fact that the Claimant may have asked Dr. Hartog on occasion to examine his back and neck and upper extremities for evidence of further injuries, is not the same as complaining of significant symptoms. Even as late as April of 2003, when Dr. Hartog was still treating the Claimant, his records contain no reference to complaints of neck or pain or upper extremity symptoms.

\* \* \* \*

The demeanor and manner of the witnesses seemed to be appropriate and responsive. Good eye contact was maintained and answers to questions were generally direct, although all witnesses showed a tendency to volunteer additional information. It is difficult to conclude from observation of the witnesses that they were willfully misrepresenting facts. However, as noted, a request to a physician to perform examinations to rule out problems is not the same as demonstrating significant symptoms. Lay witnesses may not know how to assign weight to events and conditions.

[¶ 21] On other issues, the hearing officer indicated he did not believe Cramer's testimony:

If the Claimant had truly believed that he had injured his neck, and if he was suffering neck or shoulder pain symptoms shortly after the industrial accident, he could have communicated this information

to his case analyst. When the Claimant went to see the chiropractor, he was suffering great pain. If he had truly thought that his injury was work-related, he could, and should have reported that to his case analyst or to the chiropractor.[1] Although the Claimant testified that he did talk to his case analyst about his knee injury and perhaps about his other symptoms, there was nothing in the record to corroborate this. The Claimant's analyst is an experienced Worker's Compensation analyst who would presumably have made notes if a Claimant had complained of additional symptoms. Thus, the Order reflects that, contrary to Cramer's assertions, the hearing officer did not find the testimony of Cramer, his wife and his father to be credible in all respects. Consequently, because Cramer's initial premise is incorrect, the denial of benefits is not illogical on the ground claimed.

[¶ 22] Cramer also alleges that the final determination was arbitrary, capricious or an abuse of discretion because the hearing officer found the herniated disc was most likely caused by a traumatic event and that nothing in the record suggested the disc herniation was caused by anything other than the traumatic fall at work. This theory, however, fails to account for the fact that it is Cramer's burden to affirmatively prove a causal connection between his herniated disc and the October 18, 2002, work accident. *Newman*, 2002 WY 91, ¶ 27, 49 P.3d at 174. The Division is not required to prove a negative. Rather, the complainant must prove a causal connection by a preponderance of the evidence.

[¶ 23] In the instant case, the hearing officer seemed to agree with Dr. Simpson "that the herniated disc was most likely caused by a traumatic event, not by aging or degenerative disc disease." The hearing officer, quite correctly, did not automatically assume Cramer's work accident was that traumatic event. Indeed, Dr. Simpson "was unable to offer an opinion regarding whether the industrial accident on October 18, 2002, was the event which caused trauma to the cervical spine." It was Cramer's burden to affirmatively connect the herniated disc to his work accident. The hearing officer determined Cramer failed to prove causation by a preponderance of the evidence. Reviewing the entire record, this Court fails to discern how the hearing officer's determination was arbitrary, capricious or an abuse of discretion.

[¶ 24] In a final desperate attempt to get the Order overturned, Cramer alleges the hearing officer impermissibly relied upon the absence of notes of the Division's claim analyst to raise an inference that Cramer did not report his complaints of neck and shoulder pain. Cramer has not, however, presented any indication that any such notes exist. Cramer's argument is based upon nothing more than sheer speculation, and this Court will not consider it further.

## CONCLUSION

[¶ 25] The final determination of the hearing officer is supported by substantial evidence, is not arbitrary, capricious or an abuse of discretion. Affirmed.

---

1. Cramer complains that Dr. Winkler's records show that he did report that his symptoms were due to the work-related accident. However, the records are ambiguous in this regard since Dr. Winkler listed the date of injury as June 13, 2003. At any rate, any potential error by the hearing officer is harmless given the extent of the other evidence in the record.