2006 WY 64

**Elsie SANCHEZ, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. 05–204.

Supreme Court of Wyoming.

May 26, 2006.

Representing Appellant: Michael H. Schilling of Schilling & Winn, P.C., Laramie, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; and Kristi M. Radosevich, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] Elsie Sanchez (the claimant) sought workers' compensation benefits alleging that she developed thoracic outlet syndrome (TOS) during her employment with Carbon County School District # 1 (the employer). The Wyoming Workers' Safety and Compensation Division (the Division) denied benefits and, after a contested case hearing, the Medical Commission (the Commission) determined that the claimant's symptoms were not compensable. On appeal, the district court affirmed the Commission's decision. We will affirm the denial of benefits.

## ISSUES

[¶ 2] 1. Is the Commission's finding that the claimant's symptoms were not causally

related to her employment supported by substantial evidence?

2. Are the Commission's actions arbitrary and capricious?

## FACTS

[¶ 3] The claimant started working for the employer as a custodian in 1989, and continued this employment until January 30, 2002. In October 2001, the claimant began waking up at night with numbness in her arms and fingers and noted increasing neck pain, headaches, nausea, and general weakness; however, she did not suffer any discrete injury at work that triggered these symptoms. She filed a Report of Injury with the Division on December 3, 2001. The Division determined that the injury was work-related and provided workers' compensation benefits through July 11, 2003.

[¶ 4] On April 10, 2002, the claimant underwent a discectomy and spinal fusion for "cervical spondylotic radiculopathy" and was assigned a 28% whole person impairment rating. She initially reported an improvement in her condition, though she continued to have intermittent numbness in her hands. Eventually, the claimant saw Dr. Richard Sanders, a TOS specialist, when her headaches and neck pain returned and the numbness in her hands increased. Dr. Sanders came to the conclusion that, "[t]o a reasonable degree of medical certainty, [the claimant's] symptoms are due to repetitive-stress injury at work." He performed an operation to treat the TOS symptoms on the claimant's right side on May 29, 2003, and another operation to treat her left side on August 19, 2003.

[¶ 5] The claimant requested workers' compensation benefits for her TOS treatment, but the Division denied the claim because the TOS was "unrelated to the workers compensation injury of October 24, 2001 . . . and is not compensable." After a hearing, the Commission agreed with the Division that her symptoms were not causally related to her employment and denied the claim. She appealed that decision to the district court, which affirmed the Commission. This appeal followed.

## STANDARD OF REVIEW

[¶ 6] When reviewing administrative action, we conduct our review as if the appeal had come directly from the administrative agency. *Hicks v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 11, ¶ 16, 105 P.3d 462, 469 (Wyo.2005). Our review is limited by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005), which provides, in pertinent part:

(c) . . . The reviewing court shall:

. . . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . .; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 7] The claimant in a workers' compensation case bears the burden of proving the elements of the claim by a preponderance of the evidence. *Decker v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 160, ¶ 21, 124 P.3d 686, 693 (Wyo.2005). When both parties present evidence, we apply the substantial evidence test. *Id.*, ¶ 23, 124 P.3d at 694. Under the substantial evidence test,

"we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence."

*Cramer v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 124, ¶ 10, 120 P.3d 668, 671 (Wyo.2005) (quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo.2002)).

[¶ 8] Even if substantial evidence supports an administrative decision, it may still be arbitrary and capricious. *Decker*, ¶ 24, 124 P.3d at 694. "Under the umbrella of arbitrary and capricious actions would fall potential mistakes such as inconsistent or incomplete findings of fact or any violation of due process." *Padilla v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 10, ¶ 6, 84 P.3d 960, 962 (Wyo.2004). Finally, we review conclusions of law *de novo*. *Blommel v. State ex rel. Wyo. Dep't of Empl., Div. of Workers' Safety & Comp.*, 2005 WY 128, ¶ 9, 120 P.3d 1013, 1015 (Wyo.2005).

## DISCUSSION

### Substantial Evidence

[¶ 9] The claimant argues that the Commission's decision to deny benefits was not supported by substantial evidence. The Commission concluded that "the purported TOS condition treated by Dr. Sanders has not been shown to be related to or caused by her employment. . . ." This conclusion was based on a finding that Dr. Sanders did not fully understand the nature of the claimant's occupational requirements or her out-of-work activities when he diagnosed her with work-related TOS. The Commission further determined that the claimant's job duties did not include repetitive motions that trigger TOS. The claimant contends that Dr. Sanders' conclusions were based on competent evidence, were corroborated by other evidence in the record, and that the other evidence in the record did not support the Commission's decision.

[¶ 10] When an injury[1] arises over time, a claimant's burden of proof is enhanced by Wyo. Stat. Ann. § 27–14–603(a) (LexisNexis 2005).[2] *Yenne–Tully v. Workers' Safety & Comp. Div., Dept. of Empl.*, 12 P.3d 170, 172 (Wyo.2000). In pertinent part, that statute reads:

(a) The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to prove by competent medical authority that his claim arose out of and in the course of his employment and to prove by a preponderance of the evidence that:

(i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury;

(ii) The injury can be seen to have followed as a natural incident of the work as a result of the employment;

(iii) The injury can fairly be traced to the employment as a proximate cause;

(iv) The injury does not come from a hazard to which employees would have been equally exposed outside of the employment; and

(v) The injury is incidental to the character of the business and not independent of the relation of employer and employee.

Wyo. Stat. Ann. § 27–14–603. Although the statute specifically enumerates five elements,

---

1. The Worker's Compensation Act defines "injury" as:

"Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:

. . . .

(F) Any injury or condition preexisting at the time of employment with the employer against whom a claim is made;

(G) Any injury resulting primarily from the natural aging process or from the normal activities of day-to-day living, as established by medical evidence supported by objective findings[.]

Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2005).

2. In her brief, the claimant initially argues that her TOS "is factually a 'second compensable injury.' As such, the enhanced burden of proof under W.S. § 27–14–603(a) should not have been applied to the Appellant by the medical panel." The claimant, however, concludes this argument by stating that she "does not appeal the non-application of the second compensable injury rule." The remainder of the claimant's appellate argument analyzes her claim under Wyo. Stat. Ann. § 27–14–603(a). Consequently, we will also restrict our review to that analysis.

"they are closely related because each contributes to indicate whether the employment environment caused the injury. Therefore, the same evidence will often offer support to several of the elements." *Sinclair Trucking v. Bailey*, 848 P.2d 1349, 1353 (Wyo.1993), *overruled on other grounds by Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 24, 49 P.3d 163, 172 (Wyo.2002). *See also Baxter v. Sinclair Oil Corp.*, 2004 WY 138, ¶ 14, 100 P.3d 427, 432 (Wyo.2004) (reaffirming the *Sinclair Trucking* analysis of § 27–14–603). The test under § 27–14–603(a) is whether a claimant has shown "a causal connection between the injury and the employment." *Sinclair Trucking*, 848 P.2d at 1352. A "causal connection exists when there is a nexus between the injury and some condition, activity, environment or requirement of the employment." *Id.* The Commission held that no such connection was proven by the claimant and, therefore, determined that her TOS was not compensable. That decision is supported by substantial evidence.

[¶ 11] The claimant presented Dr. Sanders' testimony and argued that the Commission should take guidance from Colorado's rules when evaluating a TOS claim. Under the Colorado rules that were submitted by the claimant, TOS

> is felt to be a neurovascular disorder affecting the upper extremity which, on rare occasions, is caused by workplace factors, such as jobs that require repetitive activities of the upper extremities. It should be emphasized that occupational TOS is a relatively uncommon disorder and other disorders with similar symptomatology need to be ruled out.
>
> . . . .
>
> The majority of occupations resulting in TOS are probably related to tasks requiring repetitive activities and awkward postures. Although little published literature exists regarding TOS as an occupational disorder, at-risk occupations include workers on assembly lines with repetitive head motions and keyboard work (e.g. typewriter, computer, adding machine). A common factor in the development of TOS in these occupations is that the workers'

hands are fixed to a keyboard or machine. When attempting to talk to others in the work area or talk on the telephone, or when looking from copy to monitor to keyboard, in a suboptimal ergonomic worksite. The worker must extend his/her neck in various directions in order to keep the hands in a fixed position. When working on an assembly line, the worker must look up or down for the next item. The result probably is small neck traumata which eventually lead to scalene muscle stretching, fibrosis, and nerve compression, since the nerves of the brachial plexus are normally in contact with these muscle fibers.

Dr. Sanders testified that he had been involved in creating the Colorado rules and that he was experienced in diagnosing and treating TOS. He stated that TOS generally developed in one of three ways: (1) a patient could experience a "whiplash" type of injury, often from automobile accidents; (2) a patient could fall, or otherwise strain his/her body "where the neck gets jerked or a person lands on their shoulder"; and (3) "repetitive stress" can cause TOS without any sudden injury, as when a worker is "doing data entry all day long." Dr. Sanders ultimately concluded that "[t]o a reasonable degree of medical certainty, [the claimant's] symptoms are due to repetition stress injury at work" and her symptoms arose from strain to her neck caused by "moving chairs, tables, garbage cans, dumping garbage cans"—activities that could involve lifting between 50 and 70 pounds. The Commission found that Dr. Sanders' conclusion could not be relied upon because he had not inquired sufficiently into the claimant's job duties, the frequency of heavy lifting, or into her non-work-related leisure activities that could have caused her symptoms. Instead, the Commission found the testimony of Dr. Marc Treihaft to be credible, which testimony indicated that the claimant's physical infirmities were not work-related.

[¶ 12] When faced with deciding between the conclusions of two medical experts, the fact-finder must consider: (1) the opinion given; (2) the reasons for the opinion; (3) the strength of the opinion; and (4) the qualifications and credibility of the indi-

vidual giving it. *Thornberg v. State ex rel. Wyo. Workers' Comp. Div.*, 913 P.2d 863, 868 (Wyo.1996), *as modified on denial of reh'g* (Apr. 29, 1996). We generally defer to the fact-finder's determinations of credibility and the weight to be given to conflicting evidence. *Id.* at 869.

[¶ 13]   Dr. Sanders testified that in 90% of his cases, TOS is caused by either a "whiplash" injury, a fall, or other distinct injury "where the neck gets jerked or a person lands on their shoulder." In the instant case, the claimant has never alleged that she suffered such a workplace injury; instead, Dr. Sanders stated that the claimant's TOS fell into the third category—workers with "repetitive stress" injuries.

[¶ 14]   Dr. Sanders examined the claimant one time before he diagnosed her injury as work-related and recommended surgery to treat her TOS. According to Dr. Sanders, the claimant developed TOS from repetitive stress because she was "lifting barrels of 50 pounds and sometimes up to 70 pounds, you tend to throw your neck back to give you a little aid in lifting, and this was probably the mechanism . . . ." However, he admitted that, while examining the claimant, he did not inquire into any of her non-occupational pursuits that may have caused TOS, even though such an inquiry was required under the Colorado rules that he assisted in drafting. Regarding the claimant's job duties, Dr. Sanders gave the following answers to questions posed by counsel for the Division:

Q.   And how many times per day was [the claimant] lifting 50 to 70 pounds?

A.   I didn't ask her specifically how many times, but I gathered it was several times when she would come in to clean up and empty the various gallons into a dumpster.

Q.   Okay. How did you gather that? What specifically did she tell you that led you to believe that?

A.   She told me that she worked for a few hours doing this.

Q.   Worked for a few hours doing what?

A.   Cleaning, lifting.

Q.   I'm—

A.   I don't have specific details to tell you how many times she was doing this a day.

Q.   Okay. And that's, I guess, my question. You say this was from repetitive lifting. I'm wondering what information you have to suggest she lifted these things more than once per shift or once per week.

A.   Well, she told me [she] was cleaning up a lunchroom. And I didn't ask her how many tables or chairs there were in the lunchroom. But if she's cleaning up a lunchroom in a school, I imagine that she was lifting several chairs, several tables, and had certainly more than one or two garbage barrels to empty.

Q.   Okay. Would you agree that that's speculation on your part, because you haven't seen the lunchroom?

A.   I would agree.

Q.   Okay. And specifically you didn't question her further about the repetitiveness of this type of work; you just took it that a janitor did this type of work and it must have been repetitive. Is that a fair statement?

A.   Yes.

Based on this evidence, the Commission could properly conclude that Dr. Sanders lacked vital information to support his opinion and, therefore, the reasons for the opinion and the strength of the opinion were lacking in foundation.

[¶ 15]   In contrast, Dr. Treihaft, another physician who assisted in developing Colorado's TOS rules, reviewed the claimant's records and came to the conclusion that

[t]he patient's initial symptoms of severe neck pain and headaches do not appear to be work-related. There was no obvious injury and these symptoms are not attributable to repetitive motion. The numbness in her hands may have been related to a carpal tunnel syndrome undetected by the electrophysiologic studies. The work-relatedness of her hand numbness is also subject to question as the job description does not support repetitive motion.

Addressing the question of [TOS], the syndrome may be divided into three groups, vascular (arterial and venous), neurogenic,

and non-specific or disputed. Ms. Sanchez' presentation and evaluation are inconsistent with the vascular or the true neurogenic [TOS].

... I find no convincing evidence of [TOS] requiring surgery in this case.

[¶ 16] The Commission did not clearly err in agreeing with Dr. Treihaft and determining that Dr. Sanders did not have enough information to conclude that the claimant's TOS was work-related. Dr. Sanders' opinion lacked foundation as to the frequency of the claimant's heavy-duty employment obligations and her non-work-related activities.[3] We also note that the Colorado rules that Drs. Sanders and Treihaft assisted in drafting emphasized "that occupational TOS is a relatively uncommon disorder and other disorders with similar symptomatology need to be ruled out." It does not appear that Dr. Sanders attempted to rule out similar conditions before recommending the claimant for TOS surgery.

[¶ 17] Dr. Treihaft, on the other hand, based his opinion on a review of the claimant's entire medical file and determined that her symptoms were not indicative of TOS and they did not appear to be work-related. The critical distinction between the two experts was that, while Dr. Sanders concluded that the claimant's TOS was work-related but lacked the appropriate evidence, Dr. Treihaft determined, based on the claimant's entire medical history, that evidence did not exist to support a finding of occupational TOS. While the Commission could have come to other conclusions based on the evidence presented, our standard of review requires us to accept its conclusions if they are supported by substantial evidence. In this case, it appears that a reasonable mind could accept Dr. Treihaft's conclusions and we must, therefore, affirm the Commission's findings.

### Arbitrary and Capricious

[¶ 18] The claimant next argues that the Commission's decision was otherwise arbitrary and capricious because "there is an absence of promulgated legislation, rules, and regulations for determination of whether or not [TOS] exists and whether or not it is work related in Wyoming." The claimant further argues that

[t]here has been no adoption by Wyoming of the Colorado definition of TOS occupations or any other definition of TOS occupations. There is no definition of repetitive motion anywhere to be found in the statutory or administrative provisions of the Wyoming Workers' Compensation scheme. The medical panel creates out of whole cloth an extremely narrow concept that in order for an injury to be the result of repetitive activities, only occupations with "classic repetitive motion" can qualify. Without any objective criteria establishing what constitutes repetitive motion in work, or which occupations may be defined as repetitive, the medical panel concludes that [the claimant] was not employed in a position that had repetitive motion components.

[¶ 19] We have recognized a variety of ways in which an agency's actions can be arbitrary and capricious. *See Padilla,* ¶ 6, 84 P.3d at 962 ("inconsistent or incomplete findings of fact or any violation of due process"); *Hoff v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2002 WY 129, ¶ 8, 53 P.3d 107, 110 (Wyo.2002) ("agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other WAPA review standards"); and *Newman,* ¶ 23, 49 P.3d at 172 ("the agency may have willfully discounted credible evidence, refused to admit certain testimony or documentary exhibits, or failed to provide findings of fact or conclusions of law"). While we have never created an exclusive list of arbitrary and capricious actions, the claimant has not attempted to analogize the actions of the Commission or the Division to any of our previous case law, and has further failed to demonstrate how the absence of "legislation, rules, and regula-

---

3. The claimant correctly points out that she presented testimony regarding the amount and frequency of lifting she did during the course of her employment and also regarding her lack of high-risk leisure activities. However, when weighing the opinions of the experts in this case, the Commission could still discount Dr. Sanders' opinion because it lacked foundation when Dr. Sanders examined the claimant and scheduled her for surgery.

tions" specifically dealing with TOS is otherwise arbitrary and capricious. Because the claimant's argument is not supported by citation to pertinent authority and merely references the claimant's closing argument, but not factual evidence contained in the record, it must fail. *Hicks,* ¶ 25, 105 P.3d at 472.

## CONCLUSION

[¶ 20] The Commission's conclusion that the claimant's TOS was not causally related to her employment is supported by substantial evidence. Further, the claimant has not demonstrated that the Commission's decision was otherwise arbitrary and capricious.

[¶ 21] Affirmed.