2002 WY 131

**Terry Ray VAUGHAN, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Respondent).**

No. 01–31.

Supreme Court of Wyoming.

Sept. 6, 2002.

Keith R. Nachbar, Casper, WY, Representing Appellant. Argument by Mr. Nachbar.

Gay Woodhouse, Attorney General; Gerald L. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General, Representing Appellee. Argument by Mr. Delicath.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1]  This is an appeal from a determination of the State Medical Commission (Medical Commission) denying the permanent total

* Chief Justice at time of oral argument.

disability claim of appellant Terry Ray Vaughan (Vaughan). We reverse and remand.

## ISSUES

[¶ 2] Vaughan sets forth the following issues:

1. Did the Medical Commission commit reversible error in failing to apply the odd lot doctrine in this case?

2. Did the Medical Commission panel improperly interpret and apply the definition of permanent total disability in denying the Claimant's benefits?

3. Is the unwillingness of the Claimant to become dependent on prescription pain medication a proper basis for denial of permanent total disability benefits, where the Division did not plead a harmful or injurious practice defense to the claim?

Appellee State of Wyoming ex rel. Wyoming Workers' Compensation Division (Division), phrases the issues on appeal as:

I. Does substantial evidence support the Medical Commission's determination that Appellant is not permanently totally disabled?

II. Did the Medical Commission err in applying the definition of permanent total disability from Wyo. Stat. Ann. § 27–14–102(a)(xvi)?

## FACTS

[¶ 3] Vaughan suffered a serious work related back injury in 1994. After a number of surgeries, Vaughan received a twenty-three percent permanent partial impairment award in 1999. Vaughan's condition then worsened and, after failed attempts to secure employ-

ment given his physical limitations, Vaughan made an application for permanent total disability benefits which was denied by the Division. Vaughan appealed this determination, and a contested case hearing was held before the Medical Commission, with the Medical Commission upholding the decision of the Division. Vaughan then filed a petition for review before the district court, and this matter was certified directly to this court for appellate review.

## STANDARD OF REVIEW

[¶ 4] Judicial review of an agency action is directed by Wyo. Stat. Ann. § 16–3–114.[1] *Serda v. State ex rel. Workers' Safety and Compensation Div.*, 2002 WY 38, ¶ 18, 42 P.3d 466, ¶ 18 (Wyo.2002). Our standard of review when reviewing administrative agency action was recently clarified and refined in the case of *Newman v. State ex rel. Workers' Safety and Compensation Div.*, 2002 WY 91, 49 P.3d 163 (Wyo.2002). That case held that "the substantial evidence test is the appropriate standard of review ... when factual findings are involved and both parties submit evidence." *Newman*, at ¶ 22.

[¶ 5] In appeals where both parties submitted evidence at the hearing below, and the dispute is over the soundness of the factual findings of the agency, *Newman* mandates the appellate review be limited to application of the substantial evidence test. *Id.* This is true regardless of which party appeals from the agency decision. The substantial evidence test provides:

> In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an

---

1. Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001):

   (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

   (i) Compel agency action unlawfully withheld or unreasonably delayed; and

   (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

   (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

   (B) Contrary to constitutional right, power, privilege or immunity;

   (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

   (D) Without observance of procedure required by law; or

   (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

*Newman*, at ¶ 12 (quoting *State ex rel. Workers' Safety and Compensation Div. v. Jensen*, 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001)). In addition, we held that this court is required to review the entire record in making its ultimate determination on appeal.[2] *Newman*, at ¶ 19 and ¶¶ 24–26.

[¶ 6] In *State ex rel. Workers' Safety and Compensation Div. v. Garl*, 2001 WY 59, ¶ 9, 26 P.3d 1029, ¶ 9 (Wyo.2001), we further recognized that:

> The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are questions of law over which our review authority is plenary. *Collicott [v. State ex rel. Workers' Safety and Compensation Div.*, 2001 WY 35], ¶ 4[, 20 P.3d 1077, ¶ 4 (Wyo. 2001) ]. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. *Id.* We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. *Id.*

[¶ 7] Moreover, the *de novo* review by this court of the conclusions and application of law made by the administrative agency should not be confused with the arbitrary-and-capricious standard of review enumerated in *Newman. Newman* provides that even when the factual findings are found to be sufficient under the substantial evidence test, this court could possibly be required to apply the arbitrary-and-capricious standard as a "safety net" to catch other agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other WAPA review standards. A purely demonstrative listing is provided of situations which might warrant the consideration of the arbitrary-and-capricious standard in addition to the substantial evidence test.[3] *Newman*, at ¶ 23. However, the instant appeal presents no such unique circumstances. *In accord see Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998).

### DISCUSSION

[¶ 8] Vaughan argues it was reversible error for the Medical Commission to fail to apply the odd lot doctrine with respect to his permanent total disability claim. This court has long recognized the odd lot doctrine with respect to permanent total disability determinations made within the purview of the Wyoming Worker's Compensation Act. In the case of *Schepanovich v. United States Steel Corp.*, 669 P.2d 522, 525 (Wyo.1983) this court stated:

> In our opinion in *Cardin v. Morrison–Knudsen*, Wyo., 603 P.2d 862 (1979), this court adopted a definition of the "odd-lot doctrine" as follows:
>
> " . . . The 'odd-lot doctrine' is described in 2 Larson, Law of Workmen's Compensation, § 57.51 at p. 10–109 (1976), as providing that permanent total disability 'may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well known branch of the labor market.'" 603 P.2d at 863–864.

An injured workman who comes within the "odd-lot doctrine" need not show that he is totally incapable of doing any work at

2. In making this holding, this court specifically abrogated previous case law which required this court to review the record in an administrative action by examining only that evidence that favors the prevailing party, allowing every favorable inference, while omitting consideration of any conflicting evidence. This previously required type of review was aptly characterized by this court as the "prevailing parties' evidence" concept. *Newman*, at ¶ 25.

3. "For example, the administrative record may be replete with evidence supporting the decision, and yet the agency may have willfully discounted credible evidence, refused to admit certain testimony or documentary exhibits, or failed to provide findings of fact or conclusions of law." *Newman*, at ¶ 23.

all in order to be entitled to an award for permanent total disability. *E.R. Moore Co. v. Industrial Commission*, 71 Ill.2d 353, 17 Ill.Dec. 207, 376 N.E.2d 206 (1978); *Wilson v. Weyerhaeuser Company*, 30 Or. App. 403, 567 P.2d 567 (1977); and 2 Larson, Workmen's Compensation Law, § 57.51, at 10–164.21 (1982). This court has stated the proposition in this fashion:

"... The theory of counsel for the employer appears to be that the workman must go further than to show that he cannot do any hard work; that he must also show that he cannot do light work. Of course, it would almost be impossible, in many instances, for a man educated only to do hard work, to show that at some time or other some good Samaritan might not turn up and offer him some light work which he might be able to do. The law does not require impossibilities. It is stated in 71 C.J. 1071 that 'where it is found that the employee is permanently and totally disabled so far as hard or manual work is concerned, but that he might do light work of a special nature not generally available, the burden is on the employer to show that such special work is available to the employee.' ..." *In re Iles*, 56 Wyo. 443, 452, 110 P.2d 826 (1941).

[¶ 9] This court went on further to enunciate in *Schepanovich*, at 528:

The burden of proof initially is assigned to the injured workman who is seeking to qualify as permanently totally disabled under the "odd-lot doctrine" to demonstrate that he is incapacitated "from performing any work at any gainful occupation for which he is reasonably suited by experience and training." Section 27–12–405(a), W.S.1977; *Cardin v. Morrison–Knudsen*, *supra*. The test to be invoked is whether the workman is so disabled that the services which he is reasonably equipped to perform by his experience and training are not marketable in a well-known branch of the labor market in the community so as to provide a steady and continuous source of income rather than sporadic or intermittent employment. See 2 Larson, Workmen's Compensation Law, § 57.51 (1982).

If that showing is made, the burden of proof is then shifted to the employer to show that light work of a special nature which the employee could perform but which is not generally available in fact is available to the employee. *In re Iles, supra; Cardin v. Morrison Knudsen, supra.*

[¶ 10] Finally, this court adopted the following rule formulated in 2 Larson, *Workmen's Compensation Law*, § 57.61, at 10–164.95 to 1–164.114 (1982) through its opinion in *Schepanovich*, at 528–29:

"... If the evidence of degree of obvious physical impairment, coupled with other facts such as the claimant's mental capacity, education, training, or age, places claimant prima facie in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant. Certainly in such a case it should not be enough to show that claimant is physically capable of performing light work, and then round out the case for noncompensability by adding a presumption that light work is available. . . .

"The corollary of the general-purpose principle just stated would be this: If the claimant's medical impairment is so limited or specialized in nature that he is not obviously unemployable or relegated to the odd-lot category, it is not unreasonable to place the burden of proof on him to establish unavailability of work to a person in his circumstances, which normally would require a showing that he has made reasonable efforts to secure suitable employment. . . ."

Other jurisdictions in this context have held that an employee in circumstances similar to those of the appellant must show that reasonable efforts have been made to obtain suitable employment in order to meet their burden of proof and shift the burden of proof to the employer. *Wiedmaier v. Industrial Commission*, 121 Ariz. 127, 589 P.2d 1 (1978); *Oliver v. Wyandotte Industries Corporation*, Me., 360 A.2d 144 (1976); *Marez v. Kerr–McGee Nuclear Corporation*, 93 N.M. 9, 597 P.2d 1178 (1978) (Sutin, J., specially concur-

ring); *Haines v. State Accident Insurance Fund*, 27 Or.App. 793, 558 P.2d 367 (1976); *Shealy v. Algernon Blair, Inc.*, 250 S.C. 106, 156 S.E.2d 646 (1967). See also cases cited in 2 Larson, *Workmen's Compensation Law*, § 57.61 at 10–164.114, n. 29 (1982).

[¶ 11]   Recognizing the above precedent, Vaughan argues the Medical Commission erred when it found he was not entitled to a permanent total disability award. In particular, Vaughan contends the Medical Commission erred in holding he had failed to sustain his burden of proof on the issue of permanent total disability as defined by § 27–14–102(a)(xvi). He argues vigorously the uncontradicted and unimpeached testimony in the record establishes he is permanently incapacitated from performing any work at any gainful occupation for which he was reasonably suited by experience and training. His position is the Division failed to present any evidence that some special work of a light or sedentary nature was actually available to him so he could not qualify as a permanently disabled worker under the odd lot doctrine. We agree.

[¶ 12]   In § 27–14–102(a)(xvi) (Lexis 1999) there appears a definition of permanent total disability, which reads as follows:

(a) "Permanent total disability" means the loss of use of the body as a whole or any permanent injury certified under W.S. 27–14–406, which permanently incapacitates the employee from performing work at any gainful occupation for which he is reasonably suited by experience or training.

The claim of Vaughan that he is totally disabled is presented under the phrase relating to a condition which "permanently incapacitates the employee from performing work at any gainful occupation for which he is reasonably suited by experience or training." It is of significance that the legislature specifically used the words "gainful occupation" in this definition which suggests its concurrence with those policy considerations utilized previously by this court in support of the adop-

tion of the odd lot doctrine. In fact, this court has previously recognized the statutory definition for permanent total disability is consistent with the odd lot doctrine. *Gilstrap v. State ex rel. Workers' Compensation Div.*, 875 P.2d 1272, 1274 (Wyo.1994) (citing *City of Casper v. Bowdish*, 713 P.2d 763, 765 (Wyo.1986) and *Cardin v. Morrison–Knudsen*, 603 P.2d 862, 863–64 (Wyo.1979)).

[¶ 13]   In October of 1994, while employed as a cabinetmaker, Vaughan fell injuring his back as he was walking down a plank at a construction sight. On November 8, 1994, Vaughan submitted to surgery for re-exploration of a laminectomy and removal of a recurrent disk protrusion at the L4–L5 area of his spine in an effort to decompress the L–5 nerve root.[4]   Dr. Robert C. Wood performed this surgery. This surgery was not successful as Vaughan continued to experience severe pain and problems with his lower back and lower extremities.

[¶ 14]   On November 29, 1995, Vaughan underwent surgery for a fusion of the L4 through S–1 levels. This surgery was performed by Dr. Whitney S. Robinson along with Dr. Wood. This surgery was again unsuccessful. Dr. Robinson then performed a third surgery on Vaughan in January of 1997 and removed the hardware that had been installed during the 1995 surgery. During this surgery it was noticed that although Vaughan's own bone, a metal plate, and a screw fixation were used during the earlier fusion operation, the fusion did not take, resulting in Vaughan's spine being comprised of less bone and bony structure than prior to the fusion operation and causing chronic instability between the lower vertebrae and the pelvis. Even after removal of the hardware, Vaughan's back and leg pain and related symptoms continued.

[¶ 15]   Dr. Wood recommended a fourth anterior fusion surgery. A second doctor also recommended this surgery. Nevertheless, Vaughan declined to undergo that operation due to risk of complications and because there was no guarantee of success.[5]

---

4.   In 1992, Vaughan underwent surgery concerning this same area of his back. After this surgery, Vaughan completely recovered having no problems until his 1994 accident.

5.   Dr. Terry A. Brown, an independent medical examiner in this case specializing in occupational medicine, also stated that he understood Vaughan's decision not to have this surgery.

[¶ 16]   On March 5, 1999, after a contested case hearing, Vaughan was given a twenty-three percent whole body impairment award. This award was based upon the instability of Vaughan's spine and persisting nerve root symptoms.  Vaughan testified at the hearing that he was forty-seven years old and advised that he had previously worked at various jobs making cabinetry, in heavy construction, and as a retail salesman over his occupational career.  Vaughan also stated that he had received a high school diploma and had received only approximately twelve college credit hours during the 1972/1973 school year.[6]

[¶ 17]   Since his accident in 1994, Vaughan had only been able to be gainfully employed for two weeks in May of 1998 making cowboy spurs which involved easy sedentary labor of sanding, polishing, and grinding.  This job allowed Vaughan to be able to alternate positions frequently, and his employer accommodated his disabilities. However, Vaughan was only able to work 17½ hours the first week and 15 hours the second week due to his continued   pain   and   related   symptoms.  Vaughan was released from this job because the employer needed someone that could work a consistent forty-hour work week.[7]

[¶ 18]   Vaughan also testified that, although he could generally take care of himself, his home, and his yard as a divorced single man, he had to struggle to perform these duties because of the pain and other symptoms that he continues to experience.  These duties were performed slowly and primarily in the morning hours.  During the afternoon, because of increased pain, exhaustion, and the increased onset of other symptoms, Vaughan had to remain sedentary.  Vaughan also stated that, while he used to enjoy hunting, fishing, and cross country skiing, he was simply now unable to go on these outings for even a half day.

[¶ 19]   At   the   time   of   the   hearing, Vaughan was experiencing constant, severe aching and stabbing pain with tingling that ran from his lower back through his buttocks into his thighs and knees every day.  He also advised that he was numb from his lower back from his incision through his rectum.  He further stated that his left leg was numb from the knee down through his left foot with his right leg being numb from his ankle through that foot.  He described his legs as if they had both gone to "sleep" and he could not "wake them up."  This substantially affected Vaughan's ability to walk.  Vaughan also testified that his left leg "folded up" and gave out without warning on an average of once a week, that he had worsening bowel and bladder urgency, and that he needed to use a cane about fifty percent of the time.  Vaughan had also experienced migraines since his accident.  Dr. Wood confirmed that Vaughan had these difficulties as a result of his condition.   Dr. Brown stated that he would not be surprised that Vaughan experienced these difficulties.

[¶ 20]   Vaughan also testified that he had applied for a number of jobs at hotels, motels, convenience stores, craft shops, a gift shop, and cabinet shops.  His job search was extensive and documented.   Vaughan had also worked with the Department of Vocational Rehabilitation and registered with Job Service in an effort to obtain employment.[8] Nevertheless, Vaughan was unable to find employment given his limitations.

[¶ 21]   Vaughan further testified that he did not believe that he could return to a

---

6.  Vaughan's detailed occupational career history and educational history were also set forth in detail in the Vocational Evaluation Report made by Deann Noecker, M.A., a certified vocational evaluator and licensed professional counselor with a national counselor certification.  Ms. Noecker also testified at the hearing in this matter.

7.  Vaughan's supervisor at that job indicated that Vaughan tried hard to succeed but was unable to sustain the work because of his pain and other symptoms.   Similarly, Dr. Brown stated that Vaughan had adapted well with his acknowledged chronic pain, had not given up on life, was not depressed or overly negative, and had some "energy to him."

8.  Vaughan's job search not only included inquiries with hotels, motels, convenience stores, craft shops, a gift shop, and cabinet shops but also with a video store, a realty company, a thrift shop, a liquor store, Federal Express, a veterinarian, K Mart, Wal Mart, a taxidermist, a utility company, a small engine shop, an auto shop, a glass shop, the VA Hospital, a carpet cleaner, as well as others.

cabinet making job due to the heavy lifting requirements necessary of those positions of employment. He also stated that under those current pain and other health concerns he was experiencing that he did not feel he could function over a consistent period of time at a light duty or sedentary job.[9]

[¶ 22] Vaughan's treating physician, Dr. Wood, a neurosurgeon, testified via his submitted deposition about the various surgeries performed on Vaughan, that Vaughan had a chronically instable spine from his lower spine to his pelvis with abnormal vertebrae movement and loss of motion segment integrity and other surgical options that were considered. Also, as noted above, Dr. Wood confirmed Vaughan's experience of constant, severe pain, tingling and numbness in his lower back and lower extremities, and his increased bowel and bladder problems. Dr. Wood also stated that he felt that Vaughan's condition had worsened over the past three years and that Vaughan was permanently totally disabled. Finally, Dr. Wood stated that Vaughan was permanently incapacitated from consistently performing work at any gainful occupation for which he was reasonably suited by experience or training even at the sedentary or light duty level.

[¶ 23] Ms. Noecker, M.A., a certified vocational evaluator and licensed professional counselor with a national counselor certification, also testified at the hearing, and her Vocational Evaluation Report and Addendum were submitted into evidence. After an in depth vocational evaluation looking at various test results obtained by Vaughan, reviewing Vaughan's educational and work history, and recognizing his restrictions, Ms. Noecker initially concluded that Vaughan might be able to perform part-time light duty to sedentary work but questioned whether Vaughan could, in reality, perform this type of work. Thereafter, Ms. Noecker re-evaluated Vaughan given additional information that she had obtained concerning the worsening of Vaughan's situation and submitted an Addendum to her original report. Upon re-evaluation, Ms. Noecker concluded that Vaughan

was disabled and not employable since he was not able to perform and sustain part-time light duty to sedentary work. In coming to this conclusion, Ms. Noecker further indicated that given her knowledge and experience of the Wyoming job market that Vaughan was not gainfully employable in a well known branch of the labor market in Wyoming so as to provide him with a steady and continuous source of income considering his mental ability, age, experience, training, and physical limitations.

[¶ 24] Given those facts, we conclude that Vaughan met his burden of proof under the "odd lot doctrine." These facts evidence that Vaughan was incapacitated from performing any work at any gainful occupation for which he was reasonably suited by experience and training. Moreover, these facts support a determination that he was so disabled that the services which he was reasonably equipped to perform by his education, experience, and training were not marketable in a well-known branch of the labor market in the community so as to provide a steady and continuous source of income rather than sporadic or intermittent employment.

[¶ 25] As we recognized above, under the "odd lot" doctrine, once an employee shows that he is permanently and totally disabled so far as hard or manual work is concerned, but that he might do light work of a special nature not generally available, the burden of proof is then shifted to the employer to show that such special work is available to the employee. In this case, the Division proffered only one witness, Dr. Brown, who also testified through his earlier taken deposition.

[¶ 26] Review of Dr. Brown's testimony discloses that the Division retained him to perform an independent medical evaluation of Vaughan. As a part of this independent examination, Dr. Brown examined Vaughan and obtained a history from him for approximately one hour and reviewed various medical records received exclusively from the Division. Thereafter, Dr. Brown opined that

---

9. Vaughan was also awarded Social Security disability benefits and continues to receive this assistance.

Vaughan was not totally disabled because he felt Vaughan could perform sedentary to light physical demand level categories of work within his recognized limitations.

[¶ 27] However, Dr. Brown confirmed that Vaughan certainly had significant restrictions in terms of what he could do. Moreover, Dr. Brown also stated that his opinion was based on his feeling that determining that someone was totally disabled was a very serious thing to do because often, after such a rating, the person involved gave up on working, it affected the patient severely from a psychological standpoint, and marked the "beginning of the end" for many patients. Further, Dr. Brown indicated that he knew that Vaughan was unable to continue to make cabinets or work making spurs, yet apparently still believed that Vaughan could perform sedentary to light physical demand level categories of work within his recognized limitations.

[¶ 28] Critically, although Dr. Brown stated that in his specialty he had toured many work places in the Salt Lake City Valley and in San Diego, California and that this allowed him to extrapolate what a person could do in the job market, Dr. Brown admitted that he did not have knowledge of or perform any study or evaluation of the labor market in Sheridan, Wyoming. Dr. Brown also acknowledged the economic environment in the Salt Lake City area was different than that of Wyoming since the former had larger companies who wanted to keep workers' compensation costs down. Further, Dr. Wood admitted that the key to post-injury employment is to find light enough work that the disabled individual could perform for a full or close to full time basis.

[¶ 29] In addition, when asked to describe what occupations persons with Vaughan's limitations could perform, Dr. Brown stated that he was more comfortable with identifying what the restrictions were and allowing a vocational rehabilitation expert to identify the particular jobs that might be available. In fact, on further examination, Dr. Brown stated that whether someone can perform a job requires consideration of more than just the physical condition of the person, his specialty, but also the job market and availabili-

ty, as well as mental abilities, education, training and experience, which were things that he "stayed out of" and were best left for a vocational evaluator to determine. Dr. Brown also clearly stated that he never "wanted to come across as saying" that work was available for Vaughan but just wanted to state what he was capable of performing. Dr. Brown further agreed with Dr. Wood that the duration that Vaughan could perform certain work tasks was a valid consideration. Dr. Brown also admitted that he did not perform any vocational testing on Vaughan to determine his ability to handle different types of work.

[¶ 30] Accordingly, we must conclude that the Division failed to meet its burden of proof in showing that special work was available to Vaughan in Wyoming given his particular limitations. Indeed, Dr. Brown, the Division's only witness, stated that this very area of expertise was outside his area of knowledge and was best left for determination by a vocational rehabilitation expert. He also advised that he did not have knowledge of or perform any study or evaluation of the labor market in Sheridan, Wyoming. Further, we explicitly recognize that Ms. Noecker, a specialist in the vocational arena who had detailed knowledge of the labor market in Wyoming, specifically indicated that Vaughan was not gainfully employable in a well known branch of the labor market in Wyoming so as to provide him with a steady and continuous source of income considering his mental ability, age, experience, training and physical limitations.

[¶ 31] As a last issue, Vaughan argues that the Medical Commission erroneously applied evidence that Vaughan was unwilling to become dependent on prescription non-narcotic pain medication as a basis for its decision. Vaughan argues that the practical effect of this determination was that the Medical Commission found that Vaughan had committed harmful or injurious practices sufficient to deny him benefits as defined under § 27–14–407 (LexisNexis 2001) when this section was not asserted in pleadings nor argued at hearing.

[¶ 32] Wyo. Stat. § 27–14–407 provides:

If an injured employee knowingly engages or persists in an unsanitary or injurious practice which tends to imperil or retard his recovery, or if he refuses to submit to medical or surgical treatment reasonably essential to promote his recovery, he forfeits all right to compensation under this act. ***Forfeiture shall be determined by the hearing examiner upon application by the division or employer.*** (Emphasis added.) Clearly, the Division did not make any application before the Medical Commission as plainly required pursuant to § 27-14-407. No mention is made of these issues in the Final Determination issued by the Division in this case, within the Division's Disclosure Statement, or otherwise during the entire pendency of this matter. Indeed, review of the record reveals that the Division brought forward those facts regarding the usage of prescription medication by Vaughan in an effort to minimize the level of pain felt by Vaughan as a result of the accident. Therefore, it was improper for the Medical Commission to make its ruling on this issue as it was never properly placed before it.

[¶ 33] Furthermore, we believe that our conclusion is consistent with fair and equitable due process. Due process demands that an employee know before the hearing the specific nature of the claims asserted. If the pleadings and notice of hearing are to mean anything in a contested case hearing, the administrative body must be limited in considering only those issues presented in the notice and pleadings. *In accord, Wesaw v. Quality Maintenance,* 2001 WY 17, ¶¶ 19–21, 19 P.3d 500, ¶¶ 19–21 (Wyo.2001).

[¶ 34] Finally, we note that the record does not support a finding that the Division even remotely met its burden of proof as established concerning this issue. *See State ex rel. Workers' Compensation Div. v. Bergeron,* 948 P.2d 1367, 1370 (Wyo.1997); *Celotex Corp. v. Andren,* 917 P.2d 178, 180 (Wyo. 1996); *Stanolind Oil & Gas Co. v. Harvey,* 52 Wyo. 349, 75 P.2d 1, 2 (1938); *In Re Hibler,* 37 Wyo. 332, 261 P. 648, 651 (Wyo. 1927).

## CONCLUSION

[¶ 35] The Medical Commission erred as a matter of law in not properly applying the "odd lot" doctrine which is well established under Wyoming case law. In addition, the Medical Commission erred as a matter of law by failing to recognize that the definition of permanent total disability includes a condition which "permanently incapacitates the employee from performing work at any ***gainful*** occupation for which he is reasonably suited by experience or training" which is consistent with the "odd lot" doctrine. (Emphasis added.) Further, the Medical Commission erred in its finding of fact since insufficient evidence exists to support its ultimate determination. We also specifically conclude that sufficient evidence exists to support that Vaughan met his required burden of proof under the "odd lot" doctrine. Conversely, insufficient evidence exists to establish that some kind of suitable work was regularly and continuously available to Vaughan given his limitations so as to provide Vaughan with a steady and continuous source of income as was required to be shown by the Division when the burden of proof shifted to the Division under the "odd lot" doctrine. Finally, we hold that the Medical Commission erred when it determined that Vaughan's unwillingness to become dependent on prescription non-narcotic medication was an appropriate basis for its denial of benefits as this issue had not been properly brought before the Medical Commission by the Division in this case.

[¶ 36] Reversed and remanded to the district court for its remand to the Medical Commission for entry of an order consistent with this opinion.