2006 WY 54

**In the Matter of the Worker's Compensation Claim of Bobby Joe PICKENS.**

**State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellant (Respondent),**

v.

**Bobby Joe Pickens, Appellee (Petitioner).**

No. 05–162.

Supreme Court of Wyoming.

May 4, 2006.

Representing Appellant: Patrick J. Crank, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; and Kristi M. Radosevich, Assistant Attorney General.

Representing Appellee: Edward G. Luhm of Scott, Shelledy and Luhm, P.C., Worland, Wyoming.

Before HILL, C.J., and GOLDEN, VOIGT, and BURKE, JJ., and PERRY, D.J.

VOIGT, Justice.

[¶ 1] Bobby Joe Pickens (the claimant) sought permanent total disability benefits under the "odd lot" doctrine. The Workers' Compensation Division (the Division) denied benefits and, after a contested case hearing, the Medical Commission (the Commission) agreed with the Division. On appeal, the district court reversed the Commission and held that the claimant had proven his eligibility for odd lot treatment and awarded him permanent total disability benefits. The Division now appeals. We will reverse the district court and affirm the Commission's denial of permanent total disability benefits.

## ISSUE

[¶ 2] Did the Medical Commission err when it found that the claimant did not qualify for permanent total disability benefits under the odd lot doctrine?

## FACTS

[¶ 3] At the time of his contested case hearing before the Commission, the claimant was 51 years old. The claimant dropped out of school in the ninth grade and reads at a fourth grade level. He had been employed throughout his life as a truck driver, oil field worker, and equipment operator.

[¶ 4] In September 1990, the claimant worked for MI Drilling Fluids, LLC (the employer). He was injured at work when a loader he was operating slid down a ramp and collided with a pile of material at the base of the ramp. The claimant stated that he felt a tear under his shoulder blade and sought chiropractic treatment, but he did not report the injury to the Division.

[¶ 5] In September 1991, the claimant experienced another workplace injury when an employee struck him from behind hard enough "to be knocked off balance." This injury was reported to the employer and the claimant sought workers' compensation benefits. The Office of Administrative Hearings determined that the claimant had suffered a compensable workplace injury to his back and he was eventually assigned a 9% permanent whole body impairment based on loss of motion as well as a 36% loss of earnings award.

[¶ 6] From 1992 until he filed the instant claim, the claimant was examined by a variety of doctors and rehabilitation specialists.

During these visits, the claimant complained of increasing back pain, pain in his arms and legs, numbness in his limbs, headaches, insomnia, stress, and depression. Different doctors attributed these symptoms to different disorders. Some doctors attributed the symptoms to the claimant's original workplace injuries while others attributed some or all of the symptoms to intervening falls, diabetes, high blood pressure, heart problems, carpal tunnel syndrome, obesity, and/or psychological issues. On December 31, 2001, the claimant was also awarded Social Security Disability benefits because he was "disabled as defined in the Social Security Act. . . ."

[¶ 7] The claimant applied for permanent total disability benefits but the claim was denied by the Division on July 3, 2002. The claimant objected to that determination and the Commission held a hearing on May 7, 2003. The claimant argued that he qualified for permanent total disability benefits under what is known as the odd lot doctrine. On May 29, the Commission issued an order denying the claimant benefits, concluding that the claimant's current disability was due to factors unrelated to his compensable workplace injuries.

[¶ 8] The claimant appealed the Commission's decision to the district court. The district court reversed the Commission, holding that the claimant had proven that he was entitled to permanent total disability benefits under the odd lot doctrine. The Division now appeals the district court's ruling.

## STANDARD OF REVIEW

[¶ 9] When reviewing administrative action, we conduct our review as if the appeal had come directly from the administrative agency and afford no deference to the conclusions of the district court. *Hicks v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 11, ¶ 16, 105 P.3d 462, 469 (Wyo. 2005). The scope of our review is limited by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 10] The claimant in a workers' compensation case bears the burden of proving each element of his claim by a preponderance of the evidence. *Decker v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 160, ¶ 21, 124 P.3d 686, 693 (Wyo.2005). When both parties present evidence, as in the instant case, we apply the substantial evidence test. *Id.*, ¶ 23, 124 P.3d at 694. When reviewing findings of fact under the substantial evidence test,

"we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence."

*Cramer v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 124, ¶ 10, 120 P.3d

668, 671 (Wyo.2005) (quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo.2002)).

[¶ 11] Even where substantial evidence supports an administrative decision, this Court applies the arbitrary and capricious standard of review as a "safety net" to catch agency actions that violate the Wyoming Administrative Procedures Act. *Decker,* ¶ 24, 124 P.3d at 694. "Under the umbrella of arbitrary and capricious actions would fall potential mistakes such as inconsistent or incomplete findings of fact or any violation of due process." *Padilla v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 10, ¶ 6, 84 P.3d 960, 962 (Wyo.2004).

[¶ 12] Of course, we review conclusions of law *de novo* to determine if they are truly in accordance with the law. *Blommel v. State ex rel. Wyo. Dep't of Empl., Div. of Workers' Safety & Comp.*, 2005 WY 128, ¶ 9, 120 P.3d 1013, 1015 (Wyo.2005).

## DISCUSSION

[¶ 13] On appeal, the Division argues that the Commission properly applied the odd lot doctrine and found that the claimant did not qualify for permanent total disability benefits. The claimant counters that the district court, not the Commission, properly applied the doctrine and found that he was entitled to such benefits. We first adopted the odd lot doctrine in *In re Iles,* 56 Wyo. 443, 110 P.2d 826 (Wyo.1941), and we recently also said the following:

This court has long recognized the odd lot doctrine with respect to permanent total disability determinations made within the purview of the Wyoming Worker's Compensation Act. In the case of *Schepanovich v. United States Steel Corp.*, 669 P.2d 522, 525 (Wyo.1983) this court stated:

In our opinion in *Cardin v. Morrison–Knudsen,* Wyo., 603 P.2d 862 (1979), this court adopted a definition of the "odd-lot doctrine" as follows:

"... The 'odd-lot doctrine' is described in 2 Larson, Law of Workmen's Compensation, § 57.51 at p. 10–109 (1976), as providing that perma-

nent total disability 'may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well known branch of the labor market.'" 603 P.2d at 863–864.

An injured workman who comes within the "odd-lot doctrine" need not show that he is totally incapable of doing any work at all in order to be entitled to an award for permanent total disability. This court has stated the proposition in this fashion:

"... The theory of counsel for the employer appears to be that the workman must go further than to show that he cannot do any hard work; that he must also show that he cannot do light work. Of course, it would almost be impossible, in many instances, for a man educated only to do hard work, to show that at some time or other some good Samaritan might not turn up and offer him some light work which he might be able to do. The law does not require impossibilities. It is stated in 71 C.J. 1071 that 'where it is found that the employee is permanently and totally disabled so far as hard or manual work is concerned, but that he might do light work of a special nature not generally available, the burden is on the employer to show that such special work is available to the employee.' ..." *In re Iles,* 56 Wyo. 443, 452, 110 P.2d 826 (1941).

This court went on further to enunciate in *Schepanovich,* at 528:

The burden of proof initially is assigned to the injured workman who is seeking to qualify as permanently totally disabled under the "odd-lot doctrine" to demonstrate that he is incapacitated "from performing any work at any gainful occupation for which he is reasonably suited by experience and training." Section 27–12–405(a), W.S.1977; *Cardin v. Morrison–Knudsen, supra.* The test to be invoked is whether the workman is so disabled that the services which he is reasonably equipped to perform by his

experience and training are not marketable in a well-known branch of the labor market in the community so as to provide a steady and continuous source of income rather than sporadic or intermittent employment. If that showing is made, the burden of proof is then shifted to the employer to show that light work of a special nature which the employee could perform but which is not generally available in fact is available to the employee.

Finally, this court adopted the following rule formulated in 2 Larson, *Workmen's Compensation Law*, § 57.61, at 10–164.95 to 1–164.114 (1982) through its opinion in *Schepanovich*, at 528–29:

"... If the evidence of degree of obvious physical impairment, coupled with other facts such as the claimant's mental capacity, education, training, or age, places claimant prima facie in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant. Certainly in such a case it should not be enough to show that claimant is physically capable of performing light work, and then round out the case for noncompensability by adding a presumption that light work is available....

"The corollary of the general-purpose principle just stated would be this: If the claimant's medical impairment is so limited or specialized in nature that he is not obviously unemployable or relegated to the odd-lot category, it is not unreasonable to place the burden of proof on him to establish unavailability of work to a person in his circumstances, which normally would require a showing that he has made reasonable efforts to secure suitable employment...."

Other jurisdictions in this context have held that an employee in circumstances similar to those of the appellant must show that reasonable efforts have been made to obtain suitable employment in order to meet their burden of proof and shift the burden of proof to the employer.

*Vaughan v. State ex rel. Wyo. Workers' Comp. Div.*, 2002 WY 131, ¶¶ 8–10, 53 P.3d 559, 561–62 (Wyo.2002) (some internal citations omitted).

[¶ 14] Under the odd lot doctrine, a claimant who is not actually permanently totally disabled is able to receive permanent total disability benefits because the claimant's disability and other factors make the claimant *de facto* unemployable.[1] The doctrine also works to shift the traditional burden in a workers' compensation case. The claimant is required to make a *prima facie* showing that (1) "he is no longer capable of working at the job in which he was employed at the time of his injury," and (2) "the degree of obvious physical impairment, coupled with other facts, such as mental capacity, education, training, or age" qualify him for odd lot treatment. *City of Casper v. Bowdish*, 713 P.2d 763, 765 (Wyo.1986). Once a claimant has established his *prima facie* case, the burden shifts to the Division to show that light work of a special nature which the claimant could perform is available. *Id.* at 766.

[¶ 15] Both parties agree that the claimant is currently unemployable for a variety of reasons. However, the Commission found that the claimant's inability to obtain work was not attributable to his workplace injuries, but to subsequent falls, illnesses, and psychological factors. Reasoning that "[m]any of [the claimant's] physical problems which lead to his current condition are unrelated to the work injuries," the Commission determined that the claimant was not eligible for permanent total disability benefits. The district court reversed, holding that the claimant had met his initial burden because

[t]otal disability compensable under the odd-lot doctrine is not required to be totally attributable to the compensable injuries suffered in a work-related accident. For example, in *City of Casper v. Bowdish*, 713 P.2d 763 (1986), Bowdish, who qualified for total permanent disability benefits pursu-

---

1. "[T]his court has previously recognized the statutory definition for permanent total disability [Wyo. Stat. Ann. § 27–14–102(a)(xvi) (LexisNexis 1999)] is consistent with the odd lot doctrine." *Vaughan*, ¶ 12, 53 P.3d at 563.

ant to the odd-lot doctrine, had been turned down for reemployment with the City of Casper because of a heart condition unrelated to the injury involved in his case. It is the physical impairment from the work-related injury "coupled with other facts such as the claimant's mental capacity, education, training or age" that we are to consider. Also, it is to be remembered that the test is whether he is so disabled that he cannot continue to do the work he is trained and equipped to do. Once the claimant establishes that much, the burden shifts to the employer, or, in this case, to the DIVISION to prove the availability of light work that the employee could do.

[¶ 16] We are presented with a mixed question of fact and law. We must first determine whether substantial evidence supports the Commission's finding that subsequent injuries, medical, and mental conditions caused the claimant's inability to work or whether his current disability is work-related. The question then becomes whether, considering those facts, the claimant is eligible for odd lot treatment as a matter of law.

[¶ 17] The Commission summarized its factual findings as follows:

The Panel finds that [the claimant] has not met his burden of proof in this matter. [The claimant's] testimony was not credible nor consistent in many respects. Likewise, the history and symptoms reported by [the claimant] to health care providers was inconsistent. Further, although [the claimant] may be disabled at this time, it cannot be said that his disability is related to his minor work injuries in 1990 and 1991. His injury at that time was a mid-back strain. This back strain has progressed to global problems [a]ffecting [the claimant] including neck pain and headaches, upper extremity radicular symptoms, low back pain, and lower extremity radicular problems. Many of his physical problems which lead to his current condition are unrelated to the work injuries and include intervening falls in which he injured his low back and fractured his tail bone, diabetes which is causing polyneuropathy, high blood pressure, heart problems, carpal tunnel syndrome, obesity, and well diagnosed psychological factors which [a]ffect his pain, perception of pain and claimed disability.

Our standard of review requires us to accept the factual findings of the Commission if they are supported by substantial evidence.

[¶ 18] The claimant, in arguing that the district court correctly reversed the Commission's findings of fact, identifies three portions of the Commission's findings that he contends were erroneous. He argues that: (1) the Commission ignored the previous adjudication of his 9% impairment; (2) his current medical condition is "materially related" to his compensable workplace injury; and (3) the Commission's finding that psychological conditions are a factor in his disability is not supported by substantial evidence.[2]

[¶ 19] In two paragraphs in his appellate brief, the claimant argues that the Commission sought to "reconsider the issue" of whether he suffered compensable workplace injuries in 1990 and 1991.[3] From even a cursory reading of the Commission's findings, it is evident that this is not the case. The Commission mentioned that it could not "determine if there were any pre-existing conditions prior to the 1990 work injury" not to "question the validity of the previous adjudication" as the claimant suggests, but merely to document that it had comprehensively analyzed the claimant's medical history. The Commission noted that it had not been presented with evidence of any pre-existing conditions—which, indeed, it had not—went on

---

2. As an ancillary matter, the claimant also contends that the Commission erroneously determined that his testimony was neither "credible nor consistent"; however, he correctly notes that the dispositive factual issues in determining this appeal are found in the medical reports, so we need not discuss the issue.

3. The claimant's 1990 workplace injury was not actually a compensable injury under the Workers' Compensation Act because the claimant never filed a claim. Therefore, the tendency of both parties, the district court, and the Commission to treat the claimant's 1990 and 1991 injuries as compensable workplace injuries under the Act is incorrect. However, the outcome of this appeal doesn't require that we address the issue further.

to discuss the claimant's workplace injuries that resulted in the 9% whole body impairment, and then discussed the injuries and diagnoses that occurred after his work-related injuries. The Commission did not disregard the claimant's workplace injuries, nor did it attempt to reevaluate those injuries.

 [¶ 20] The claimant next argues that the Commission erred when it found that his current medical condition is largely unrelated to his previous workplace injuries. The record before the Commission consisted of nearly 350 pages of medical and other reports submitted by the Division and the claimant. While we do not feel it is necessary to describe each of these documents or quote at length the facts as laid out in the parties' briefs, the district court's decision letter, or the Commission's findings, we have reviewed the record and it is clear that the Commission's findings are supported by substantial evidence on this issue. The evidence that supports this conclusion includes the following:

· Dr. Kyle Norris noted evidence of a peripheral polyneuropathy which would explain a majority of the claimant's symptoms. He later noted that the claimant's pain was most likely caused by diabetes and it "[c]ertainly . . . is not related to his worker's compensation injury . . .";

· Dr. Steven Emery, an orthopedic surgeon, opined that diabetic neuropathy was causing the claimant back problems at L5;

· Dr. Joel Pull performed a physical on March 1, 2001 and documented obesity, myofascial trapezial syndrome, degenerative joint disease, "uncontrolled" diabetes mellitus, hypertension, and tobacco abuse as the causes of the claimant's impairments;

· Dr. David Healow, a pain specialist, also noted in 1995 that tobacco use seemed to be impairing the claimant's recovery;

· The claimant reported two non-work-related intervening falls to his physicians, which falls caused injuries to his back, including a fractured tailbone; and

· Finally, we have not found, nor have we been directed to, any diagnosis that establishes a causal nexus between the claimant's current disability and his prior compensable workplace injury.

[¶ 21] Although the Commission could have interpreted the evidence differently, under the substantial evidence test we cannot substitute our judgment for that of the Commission. *Cramer*, ¶ 10, 120 P.3d at 671. The Commission's factual findings on this issue are based on relevant evidence which a reasonable mind might accept in support of its conclusions and we must therefore accept its determination. *Id.*

 [¶ 22] In his final factual attack, the claimant argues that substantial evidence did not support the Commission's finding that psychological factors are enhancing the claimant's disability. The claimant argues that any diagnoses of psychological factors enhancing his pain were "rule out" diagnoses, apparently meaning that psychological causes for his pain only existed if all physical possibilities for the pain were excluded. The district court similarly found that sufficient evidence did not exist to support a finding that psychological factors were contributing to the claimant's injuries but noted that, even if such factors existed, the claimant still qualified for benefits pursuant to the odd lot doctrine.

[¶ 23] The record is replete with diagnoses that support the view that the claimant suffered from both physical and psychological pain. We have already noted some of the non-work-related physical factors that contribute to the claimant's disability and a variety of doctors also noted psychological factors that exacerbate his pain:

· Dr. Norris determined, in 1994, that the claimant's medical test results "did not seem to correlate with the patient[']s symptomatic complaints." In 1995, he noted an impression of "somatoform pain disorder, with a possible paranoid personality disorder" and "non-anatomic symptomatology."

· Regarding the claimant's application for social security disability benefits, the Administrative Law Judge found the presence of a "pain disorder associated with psychological factors."

· Dr. Paul Ruttle reviewed the claimant's records (but did not perform a physical examination) in 2002 and determined that his "psychologic profile has been the governing force in maintaining this patient's disease process."[4]

· Dr. Ralph Louis, a clinical psychologist, evaluated the claimant in 1992 and again in 2001. Dr. Louis noted a pattern of responses known as the "neurotic triad." He explained in his report that "[p]ersons with this pattern tend to have long-standing overconcern for physical ailments, hypersensitivity to even minor physical dysfunction, and constant physical complaints without adequate physical pathology. They see little correlation between their physical complaints and psychological problems." However, Dr. Louis also noted that his test could not "distinguish between actual physical problems and somatic symptoms with a psychological basis."

[¶ 24] The thrust of the claimant's argument is that the Commission could not properly rely on Dr. Louis' diagnosis because he qualified his conclusion as a "rule out" diagnosis and physical symptoms were never ruled out. This argument, however, ignores Dr. Norris' determination that the claimant was suffering from "non-anatomic" ailments and the claimant's test results did not match his symptomatic complaints. We, therefore, find that the Commission's determination that the claimant suffered from psychological pain is supported by substantial evidence.

[¶ 25] It is apparent to us that the Commission's findings of fact are supported by substantial evidence. We also note, as a final factual matter, that the claimant has never argued that the 9% permanent partial impairment he suffered as a result of his original compensable injury barred him from continuing in his previous work with the employer. The question now becomes whether, based on its factual findings, the Commission correctly applied the law when it determined that the claimant was not eligible for permanent total disability benefits under the odd lot doctrine.

[¶ 26] We agree with the Division that the Commission correctly applied the odd lot doctrine and the district court erred in reversing the Commission's denial of benefits. A claimant seeking odd lot treatment must first show that he is incapable of working at his previous employment due to injury and, after doing so, must show that his physical impairment along with "other facts" qualify him for treatment as a member of the odd lot category. *Bowdish*, 713 P.2d at 765. Put another way, a claimant must first show that "he is no longer capable of working at the job in which he was employed at the time of his injury." *Id.* Once that fact is established, a claimant must then show that he is unable to obtain employment in another field that he may be physically able to perform, but due to his "physical impairment, coupled with other facts, such as mental capacity, education, training, or age," he will not be able to find such employment. *Id.* The district court combined these two burdens to find that the claimant had proven he was unable to perform his previous employment both through his original workplace injury and his unrelated other injuries and medical conditions. This was error.

[¶ 27] In determining that "it is not required that work injuries be the sole cause of the disability" under the odd lot doctrine, the district court relied on our opinion in *Bowdish*. Specifically, the district court relied on a sentence in our recitation of the facts in which we said that Bowdish "had sought reemployment with the City of Casper, but had been turned down because of a heart condition unrelated to the injury involved in this case." *Id.* The district court apparently came to the conclusion that, just as Bowdish was unable to secure employment due to a non-work-related injury, the claimant in the instant case was eligible for odd lot treatment based on his myriad of non-work-related medical problems.

---

4. The district court took issue with this evaluation reasoning that "[n]o other physician who actually examined and/or treated [the claimant] ... agreed with that assessment." While no other doctor attributed the claimant's pain primarily to psychological factors, it is clear that a variety of medical professionals found some element of psychological pain that contributed to the claimant's condition.

[¶ 28] The district court's reliance on *Bowdish* is misplaced. As we noted above, a claimant must satisfy two distinct burdens under the odd lot doctrine. The issue in *Bowdish* was whether that claimant had proven that he was incapacitated from performing work at any occupation for which he was suited by his experience or training—i.e., whether he had proven the second element of his *prima facie* case. *Id.* at 766. Neither party argued that Bowdish was able to continue in his employment as a mechanic for the city of Casper after his injury. We ultimately held that sufficient evidence supported the Commission's finding that Bowdish was unable to work in another type of employment. *Id.* To the extent that Bowdish's heart condition was relevant at all, it only tended to show that he was disqualified from working in another capacity for the city of Casper, but it had clearly never disabled him from working in his previous employment as a mechanic for the city.

[¶ 29] We also note that adopting the district court's reasoning would impermissibly expand permanent total disability benefit awards under the Worker's Compensation Act. The Worker's Compensation Act is meant, axiomatically, to compensate workers for workplace injuries. In the instant case, the claimant received permanent partial disability for his original workplace injury and ultimately was deemed to have a 9% total body impairment and received a 36% loss of earnings award. As years passed, the claimant was injured and developed illnesses and symptoms unrelated to his original compensable injury. Because the claimant had already been compensated for his workplace injury, the district court's grant of perma-nent total disability essentially amounted to compensation for non-work-related injuries. According to the district court's reasoning, a heavy laborer who suffered an injury that resulted in a 1% permanent partial impairment would inevitably one day qualify for permanent total disability because, as the injured party dealt with the complications of aging, he would eventually become too disabled to work at his previous employment and, because of some distant workplace injury, would qualify for "odd lot" treatment.

[¶ 30] As in *Bowdish,* our previous cases have generally dealt with the second element of a claimant's *prima facie* case.[5] To the extent we have expounded on the first element, we have said that a claimant must demonstrate that he was "disabled by his work-related injury" and would be unable to work in his previous occupation. *Anaya v. Holly Sugar Corp.,* 928 P.2d 473, 475 (Wyo. 1996). We have not, however, clarified exactly what quantum of proof is required to show that disability under the first element of the odd lot test is a result of a compensable workplace injury. In a normal workers' compensation case, a claimant "bears the burden of proving a causal connection between the injury and the course of employment." *Stuckey v. State ex rel. Wyo. Worker's Comp. Div.,* 890 P.2d 1097, 1098 (Wyo. 1995). "A causal connection exists 'when there is a nexus between the injury and some condition, activity, environment or requirement of the employment.'" *Id.* (quoting *Bearden v. State ex rel. Wyo. Workers' Comp. Div.,* 868 P.2d 268, 270 (Wyo.1994), *overruled on other grounds by State ex rel. Wyo. Workers' Safety & Comp. Div. v. Bruhn,* 951 P.2d 373 (Wyo.1997)). It would

---

5. *See Vaughan,* ¶¶ 24–30, 53 P.3d at 565–66 (Wyo.2002) (central issue was whether the claimant was able to return to light duty work; we held that the claimant had established a *prima facie* case and the Division had failed to show that special work was available); *Anaya v. Holly Sugar Corp.,* 928 P.2d 473, 476 (Wyo.1996) (claimant was unable to return to previous employment, but had failed to show that he had made efforts to find work or that he was so completely disabled that any such effort would be futile); *Gilstrap v. State ex rel. Wyo. Workers' Comp. Div.,* 875 P.2d 1272, 1274 (Wyo.1994) (evidence showed the claimant was unable to continue in previous occupation, but other em-ployment was available on a continuous basis); *Banda v. State ex rel. Wyo. Workers' Comp. Div.,* 789 P.2d 124, 125–26 (Wyo.1990) (economic factors making it difficult for claimant to find a job not sufficient to show that he was unemployable); *Schepanovich v. United States Steel Corp.,* 669 P.2d 522, 527–29 (Wyo.1983) (claimant was medically retired from previous employment; the issue was whether he was able to find other suitable employment); and *Cardin v. Morrison–Knudsen,* 603 P.2d 862, 863–64 (Wyo.1979) (claimant's knee injuries prevented him from his previous warehouse employment, but light duty work was available).

seem that, in the context of the odd lot doctrine, such a causal connection must also exist between the compensable workplace injury and the claimant's inability to work at the job in which he was employed at the time of the injury.

[¶ 31] The requirement that a work-related injury must cause a claimant to be unable to continue his previous employment prevents the situation presented by the instant case, wherein a partially-injured worker develops conditions independent of his workplace injury and seeks permanent total disability. The Worker's Compensation statutes do not compensate all workers who are injured, but only workers who become injured in the course of their employment. *See* Wyo. Stat. Ann. §§ 27–14–101 *et seq.* (LexisNexis 2005). In the same vein, we will not broadly construe the odd lot doctrine as the claimant asks us to do. The doctrine is merely a specialized application of the definition of permanent total disability under Wyo. Stat. Ann. § 27–14–102(a)(xvi). *Vaughan,* ¶ 12, 53 P.3d at 563. It is not an avenue around the second compensable injury rule [6] and the doctrine does not allow workers' compensation claimants to receive permanent total disability when their disability is not causally related to their workplace injury.

[¶ 32] In the instant case, it is clear that the claimant is not eligible for permanent total disability under the odd lot doctrine and we must reverse the district court and rein-state the decision of the Commission. The Commission found that the claimant's current inability to work in his previous employment is a consequence of non-work-related injuries and ailments. Because the claimant failed to meet his initial burden of proving that his work-related injury disabled him from continuing in his previous employment, his claim for benefits under the odd lot doctrine was properly denied by the Commission.

[¶ 33] As a final matter, we note that neither party has presented an argument regarding the timeliness of the application for benefits under Wyo. Stat. Ann. § 27–14–605 (LexisNexis 2005) [7] and we will not raise the issue *sua sponte* in this instance. We will, however, reiterate what we said in *Schepanovich,* 669 P.2d at 530, in the context of an odd lot discussion:

> [W]e find that the matter of applications for modifications is troublesome in worker's compensation cases. Having achieved the award of a permanent partial disability, the appellant was applying for additional benefits, i.e., the permanent total disability award, pursuant to § 27–12–606, W.S.1977.[8] By virtue of the statutory language, such an application is submitted 'on the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud.'

---

6. "The second compensable injury rule applies when 'an initial compensable injury ripens into a condition requiring additional medical intervention.'" *Carabajal v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2005 WY 119, ¶ 12, 119 P.3d 947, 951 (Wyo.2005) (quoting *Yenne–Tully v. State ex rel. Workers' Safety & Comp. Div.,* 12 P.3d 170, 172 (Wyo.2000)). Under the rule, a subsequent injury is compensable if it is causally related to the initial compensable work injury. *Id.,* ¶ 14, 119 P.3d at 952.

7. That statute states:
 (a) If a determination is made in favor of or on behalf of an employee for any benefits under this act, an application may be made to the division by any party within four (4) years from the date of the last payment for additional benefits or for a modification of the amount of benefits on the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud....

 (b) Any right to benefits shall be terminated and is no longer under the jurisdiction of this act if a claim for any benefit is not filed with the division within the four (4) year limitation prescribed under subsection (a) of this section.
 (c). A claim for medical benefits which would otherwise be terminated under subsection (b) of this section and barred under W.S. 27–14–503(a) and (b) and may be paid by the division if the claimant:
 (i) Submits medical reports to the division substantiating his claim;
 (ii) Proves by competent medical authority and to a reasonable degree of medical certainty that the condition is directly related to the original injury; and
 (iii) Submits to an examination by a health care provider selected by the division and results of the examination validate his claim.

8. This statute is now § 27–14–605.

## CONCLUSION

[¶ 34] The claimant failed to prove his work-related injury barred him from working in his previous employment. As a result, the Commission correctly found that he was not eligible for permanent total disability benefits under the odd lot doctrine and the district court's reversal of the Commission was error. We reverse the district court and reinstate the Order of the Commission denying benefits.